# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRANDON J. WALKER,<br>Plaintiff, | :<br>:<br>: |
| v. | : CIVIL ACTION NO. 18-CV-2724 |
| GEORGE W. HILL<br>CORRECTIONAL, *et al.*,<br>Defendants. | :<br>:<br>: |

**FILED**
JUL 1 3 2018
KATE BARKMAN, Clerk
By_____Dep. Clerk

**MEMORANDUM**

JONES, J.                                                                 JULY 13, 2018

Plaintiff Brandon J. Walker, an inmate currently incarcerated at the George W. Hill Correctional Facility, has filed this civil action pursuant to 42 U.S.C. § 1983 against "George W. Hill Correctional," Shelly Mealo, CO Anderson of Pod 4, Sergeant Moor, Kitchen Staff Supervisor YG, Kitchen Staff Supervisor Rollin Payetee, and Kitchen Staff Supervisor Apollo. He has also filed a Motion for Leave to Proceed *In Forma Pauperis*. (ECF No. 1.) For the following reasons, the Court will grant Walker leave to proceed *in forma pauperis*, dismiss his claims against all Defendants except Mealo and Moor, and allow him to proceed at this time with his claims against Mealo and Moor.

## I.    FACTS

In his Complaint, Walker alleges that he "was brought into George W. Hill Correctional with severe police related injuries without first being taken to a hospital and denied medical attention." (Compl. at 3.) According to him, Sergeant Moor is the one who "denied [him] of medical attention by a nurse." (*Id.*) He was placed in a cell with two other inmates and was forced to sleep on the floor in a "boat unit." (*Id.*) Walker claims that these conditions were "unhealthy and unsanitary" because he was "two feet from the toilet bowl." (*Id.*) Subsequently,

Walker was "forced to a top bunk where [he] would re-injure [him]self jumping down and climbing up." (*Id.*)

Walker also raises allegations concerning his job in the kitchen at George W. Hill. YG issued him "damaged kitchen footwear that formed blisters on both of [his] feet." (*Id.*) Walker requested proper footwear, but YG showed "no compassion for [his] pain and fired [him]." (*Id.*) He alleges that he "refus[ed] to allow the cuts on [his] feet to be infected by following [YG] and the two kitchen supervisors['] orders to continue the use of the damage[d] kitchen wear." (*Id.*) Subsequently, Walker was "sent to medical by a block officer [who] witnessed [his] walking condition." (*Id.*) The officer saw the bottoms of Walker's feet and "called for [him] to receive [wound] care." (*Id.*) However, Shelly Mealo denied Walker "emergency medical attention." (*Id.*)

In the section of the form complaint asking about relief sought, Walker indicates that he is seeking $12.5 million dollars for being denied proper medical treatment as well as for experiencing mental anguish, anxiety, and depression. (*Id.* at 5-6.) He then asserts that he was "forced to wash out the trays inmates eat off of in trash cans the same trash cans garbage is handled in." (*Id.* at 6.) Walker further alleges that he and the other inmate who worked in the kitchen "were made to make juice and coffee in a grey trash can for inmate consumption. A very disturbing process." (*Id.*) He contends that he and other inmates are "being under fed with very little food served on the trays or things missing from the meals." (*Id.*) Finally, Walker states that he is "subjected to being bitten by the swarms of flying insects that cover our shower walls daily unknowing if any disease was transmitted from who may have been bit before [him]." (*Id.*)

## II. STANDARD OF REVIEW

The Court will grant Walker leave to proceed *in forma pauperis* because it appears that he is not capable of paying the fees to commence this civil action.[1] Accordingly, Walker's Complaint is subject to 28 U.S.C. § 1915(e)(2)(B)(ii), which requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "[M]ere conclusory statements do not suffice." *Id.* As Walker is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III. DISCUSSION

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). As discussed below, Walker's Complaint fails to allege a meritorious claim against the named Defendants, with the exception of his claims against Mealo and Moor.

### A. Discussion of the Named Defendants

#### 1. Shelly Mealo and Sergeant Moor

Walker alleges that Shelly Mealo denied him medical care for his feet after a block officer witnessed his "walking condition" from the damaged kitchen footwear. (Compl. at 3.)

---

[1] However, because Walker is a prisoner, he will be obligated to pay the $350.00 filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

3

He further claims that Sergeant Moor refused to allow him to be treated by a nurse upon intake despite his "severe police-related injuries." (*Id.*) In light of Walker's claims that Mealo and Moor were aware of potential harm to him and did nothing, he will be permitted to proceed on his claims against them at this time. *See Farmer v. Brennan*, 511 U.S. 825, 834-35 (1994).

### 2. George W. Hill Correctional Facility

Walker seeks to hold the George W. Hill Correctional Facility liable for confining him to a cell with two other individuals and forcing him to sleep on a "boat unit" on the floor. (Compl. at 3.) Walker alleges that his sleeping area was a "very unhealthy and unsanitary space two feet from the toilet bowl." (*Id.*) As an initial matter, Walker's claims against the George W. Hill Correctional Facility must be dismissed because the facility "is not a legal entity susceptible to suit." *Cephas v. George W. Hill Corr. Facility*, Civ. A. No. 09-6014, 2010 WL 2854149, at *1 (E.D. Pa. July 20, 2010) (quoting *Ignudo v. McPhearson*, Civ. A. No. 03-5459, 2004 WL 1320896, at *2 (E.D. Pa. June 10, 2004)); *see also Regan v. Upper Darby Twp.*, Civ. A. No. 06-1686, 2009 WL 650384, at *4 (E.D. Pa. Mar. 11, 2009) ("[A] prison or correctional facility is not a 'person' that is subject to suit under federal civil rights laws."). Accordingly, Walker cannot maintain his § 1983 claims against the George W. Hill Correctional Facility.

### 3. C.O. Anderson

Although Walker has named C.O. Anderson as a Defendant in this matter, he does not mention C.O. Anderson anywhere in the body of his Complaint. Walker is obligated to explain how each individual named as a Defendant was personally involved in the violation of his constitutional rights, whether due to the prison official's own misconduct or the official's deliberate indifference to known deficiencies in a policy or procedure that violated Williams's rights. *See Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 320 (3d Cir. 2014), *reversed on other*

*grounds, Taylor v. Barkes*, 135 S. Ct. 2042 (2015). Because Walker fails to mention Anderson in the body of his Complaint, he has not stated a basis for imposing liability against her. Thus, his claims against C.O. Anderson are subject to dismissal at this time.

### 4. Kitchen Staff Supervisors YG, Rollin Payetee, and Apollo

Walker has also brought suit against Kitchen Supervisors YG, Rollin Payetee, and Apollo based on their, alleging that they directed him to continue using "damaged kitchen footwear" despite the footwear causing cuts and blisters. (Compl. at 3.) He also states that YG fired him after requesting proper footwear. (*Id.*) At this time, the Court cannot discern whether these three individuals are staff members at the George W. Hill Correctional Facility or are fellow inmates. If they are fellow inmates, Walker cannot maintain his claims against them, as inmates are not state actors for purposes of § 1983. *See Simonton v. Tennis*, 437 F. App'x 60, 62 (3d Cir. 2011) (per curiam). Thus, Walker's claims against YG, Rollin Payetee, and Apollo are subject to dismissal at this time.

In sum, Walker cannot move forward on his claims, with the exception of those claims asserted against Mealo and Moor. Accordingly, the Court will dismiss the Complaint without prejudice with leave to amend, as set forth in a separate Order. Many of Walker's claims also suffer from other deficiencies, which the Court will address below.

### B. Discussion of Conditions of Confinement

Walker takes issue with various conditions at the George W. Hill Correctional Facility. However, many of his claims regarding those conditions do not state a plausible basis for a constitutional violation.

The Eighth Amendment governs claims brought by convicted inmates challenging their conditions of confinement, while the Due Process Clause of the Fourteenth Amendment governs

5

claims brought by pretrial detainees. *Hubbard v. Taylor (Hubbard I)*, 399 F.3d 150, 166 (3d Cir. 2005). Because Walker's status during his incarceration is not clear from the Complaint, the Court will analyze the Complaint under both amendments. To establish an Eighth Amendment violation based on the conditions of confinement, a prisoner must establish that prison officials' acts or omissions denied him "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). He must also establish that the defendants acted with deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). To establish a basis for a Fourteenth Amendment violation, a prisoner must establish that the conditions of confinement amount to punishment. *Bell v. Wolfish*, 441 U.S. 520, 538 (1979). That inquiry generally turns on whether the conditions have a purpose other than punishment and whether the conditions are excessive in relation to that purpose. *See id.* at 538-39; *Hubbard I*, 399 F.3d at 158.

Walker first claims that he was forced to share a cell with two other individuals and that he "was forced to sleep on the floor inside what was described as a boat unit." (Compl. at 3.) He asserts that his sleeping area was a "very unhealthy and unsanitary space two feet from the toilet bowl." (*Id.*) Housing multiple inmates in a cell does not alone establish a constitutional violation. *See Hubbard v. Taylor (Hubbard II)*, 538 F.3d 229, 236 & n.6 (3d Cir. 2008) (pretrial detainees do not have a right "to be free from triple-celling or from sleeping on a mattress placed on the floor."); *North v. White*, 152 F. App'x 111, 113 (3d Cir. 2005) (per curiam) ("Double or triple-bunking of cells, alone, is not per se unconstitutional."). Walker has not established a plausible constitutional violation because he has not alleged that the overcrowded conditions amounted to punishment, deprived him of a basic need, or otherwise caused him harm. *See Wilson v. Seiter*, 501 U.S. 294, 305 (1991) ("Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human

6

need exists."); *Bell*, 441 U.S. at 542-43 (double-bunking did not violate constitutional rights of pretrial detainees when detainees had sufficient space for sleeping and use of common areas, and the average length of incarceration was 60 days); *Lindsey v. Shaffer*, 411 F. App'x 466, 468 (3d Cir. 2011) (per curiam) ("The critical issue for Eighth Amendment purposes is not the number of prisoners who share facilities; rather, it is whether the alleged overcrowding has somehow harmed the prisoner."); *Hubbard II*, 538 F.3d at 232-35 (triple-celling of pretrial detainees, some of whom were made to sleep on floor mattresses for three to seven months, and housing of detainees in gym, weight room, and receiving area due to overcrowding, did not amount to punishment). Thus, Walker's Complaint fails to state a claim with respect to his allegations of overcrowding.

Walker next contends that he was fired from his job in the kitchen after complaining about the damaged kitchen footwear he was forced to use. (Compl. at 3.) Inmates, however, do not have a constitutional right to employment during incarceration. *See Watson v. Sec'y Pa. Dep't of Corr.*, 567 F. App'x 75, 78 (3d Cir. 2014) (per curiam) ("Inmates do not have a liberty or property interest in their job assignments that would give rise to Due Process Clause protection." (citing *James v. Quinlan*, 866 F.2d 627, 629 (3d Cir. 1989))); *Fiore v. Holt*, 435 F. App'x 63, 68 (3d Cir. 2011) (per curiam) ("[P]risoners enjoy no protected interest in prison employment."). Thus, Walker cannot maintain a claim based on the fact that he was fired from his job.

Walker also takes issue with various conditions in the kitchen. He claims that when he worked in the kitchen, he was "forced to wash out the trays inmates eat off of in trash cans the same trash cans garbage is handled in." (Compl. at 6.) He also contends that he was forced to make coffee and juice in a "grey trash can for inmate consumption. A very disturbing process."

7

(*Id.*) However, Walker has not established a plausible constitutional violation with respect to these conditions because he has not alleged that they amounted to punishment, deprived him of a basic need, or otherwise caused him harm. *See Wilson*, 501 U.S. at 305; *see also Driskell v. Jones*, No. 2:11-CV-721-WKW, 2014 WL 4795048, at *15 (M.D. Ala. Sept. 25, 2014) (noting that plaintiff had not alleged that he was personally injured by the fact that food service at the institution where he was incarcerated made juice in a large trash can).

Walker also claims that he "suffered cruel and unusual punishment by being under fed with very little food served on the trays or things missing from the meals." (Compl. at 6.) Prisoners are entitled to a nutritionally adequate diet. *Tapp v. Proto*, 718 F. Supp. 2d 598, 621 (E.D. Pa. 2010) (citing *Ramos v. Lamm*, 639 F.2d 559, 571 (10th Cir. 1980)); *see also Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (noting that inmates must be provided "well-balanced meal[s], containing sufficient nutritional value to preserve health"). Walker, however, fails to allege that "he lost weight or suffered other adverse physical effects or was denied a nutritionally and calorically adequate diet." *Berry*, 192 F.3d at 508; *see also Tapp*, 718 F. Supp. 2d at 621. Accordingly, Walker fails to state a claim based upon the meals he has received at the George W. Hill Correctional Facility.

Finally, Walker alleges that he has "been subjected to being bitten by the swarms of flying insects that cover our shower walls daily unknowing if any disease was transmitted from who may have been bit before [him]." (Compl. at 6.) Again, however, Walker's vague allegation fails to suggest that these conditions amounted to punishment, deprived him of a basic need, or otherwise caused him harm. *See Wilson*, 501 U.S. at 305; *see also Thomas v. SCI Graterford*, No. 11-6799, 2014 WL 550555, at *4-5 (E.D. Pa. Feb. 12, 2014) (concluding that while presence of insects in prison was uncomfortable, plaintiff had not "demonstrated an

8

unconstitutional threat to his health and safety"); *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 467 (M.D. Pa. 201) (infestation with roaches, spiders, worms, gnats, mice, and other unknown insects uncomfortable but not unconstitutional).

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Walker leave to proceed *in forma pauperis* and dismiss his claims against all Defendants except Shelly Mealo and Sergeant Moor. As it is possible that Walker could amend many of his claims, he will be given an opportunity to file an amended complaint in accordance with the Court's Order, which follows. If Walker fails to file an amended complaint, his Complaint will only be served on Mealo and Moor.

BY THE COURT:

_____
C. DARNELL JONES, II, J.